We'll call the case of Xi v. FBI Special Agent Andrew Haugen. May it please the Court, David Rudofsky for the plaintiff appellants in this case, Professor Xi and his family. How does he pronounce his last name? Xi, Xi. I would like to reserve two minutes for rebuttal, please. Granted. This appeal from the District Court granted a motion to dismiss. We submit three basic points. First, that Plaintiff Xi, based on the plausible allegations in the Second Amendment complaint, was subjected to a malicious prosecution, searches without probable cause, fabrication and falsification of evidence, and ethnic-based bias. The violations are actionable under the Federal Tort Claims Act and are not barred by the discretionary function exception. And the violations are actionable also under the Bivens Doctrine as they are not presented in a materially new context. Let me start with just one observation before I get into the legal arguments about FTCA and Bivens. The violations here had devastating consequences for Professor Xi and his family.  Suspended as the chair of the physics department at Temple University. Forced to live for months under a cloud of suspicion and fear. The District Court was wrong on all issues. This is a case about accountability. Mr. Rudofsky, you started by saying this is a case about malicious prosecution and fabrication, and I quite agree. You're arguing that it's not a new claim under Bivens, and yet we've got three courts of appeals who have looked at fabrication, malicious prosecution, very similar to this situation, who have said this is a new, this would be a new Bivens claim and therefore it's barred. How can you say to us that this is not a new Bivens claim? Yeah, so on Bivens, we think we fit into the heartland of Bivens. When we look at what the agent did in this case, it's not materially different from Bivens. The government argues that there was a different mechanism for the injury and a different conduct. What happened here was... Well, for only the search and seizure, for only the search, then you'd fit in Bivens. But the gravamen of the complaint is what you said. His life was ruined by the fabrication and the malicious prosecution, not by the search and seizure. Well, all of it was part of it. Certainly what the emotional damage he suffered from the search of his house, from the strip search of him... But that's not a Bivens claim. ...is accountable. The fact that they went further than they did in Bivens, the Jacobs case in the Sixth Circuit holds that. That was a wrongful arrest claim under Bivens and so on. But we have Egbert v. Boulay, the Supreme Court, saying we're not even sure we decide Bivens the same way. We're going to preserve these three specific contexts, but don't go beyond them at all. And here we have national security implications and all that spying and other things. So any possible grounds to distinguish this from those three cases don't allow a Bivens claim to go forward. To be best, I agree it's a narrow avenue to Bivens. The court has not overruled Bivens. Egbert does nothing more than Abassi. And what the government argues here, they can see that the five of the six factors in Abassi don't apply. They only argue that somehow if we allow the judiciary to become involved in this case, that would affect national security. Bivens itself was a case about drugs, which was a national security issue, according to the government. We have no difference here. Our point is, when you look at exactly what happened here, Bivens was a search without probable cause of a home. Under our allegations, what happened here is both the indictment and the search warrant were without probable cause, based on our plausible allegations. Why haven't we essentially crossed this bridge already with Pellegrino and Van der Klook? And that's to say, when we've looked before at the TSA context, we've said that there are national security implications for that sort of search being conducted. Does that apply as well here? Yes. And TSA was different. It was set up after 9-11, all those operations, obviously national security. What you have here is simply an agent who's given a label, right, as someone involved with investigating possible confidential material going to China, spying by China, and so on and so forth. The court has said national security is not a talisman for rejecting a Bivens claim. And that's really what the government's arguing here. Just because we gave him that label, it turns out when you look at what this agent did, it was based on ethnic bias. There ought to be strict scrutiny. It's one thing to set up a – I'd like to know – I appreciate that if we are to drill down on this specific case, that it looks more like a run-of-the-mill Fourth Amendment case. But Egbert tells us that we should be thinking of this in terms of the entire field. And if we're looking at the field involving counterintelligence and FISA warrants, which according to the complaint are also implicated here, then aren't we really in a very different terrain and one that does implicate national security as a field? That's right. If it was FISA, if it was national security, we'd be in a different field. That issue still hasn't been decided by the district court. That's count 10 of our complaint. The district court has not decided any issues concerning FISA. This case is not based on a FISA violation. It's based on a straight Fourth Amendment violation of an agent who conducted an investigation, was able to obtain an indictment with false information to the grand jury, and a search warrant without probable cause. But the Fourth Amendment violation was not by him. It was by other officers. No. No, no. He provided all the information. Other officers went to the house, but it was based completely on the information that he had provided. The search warrant affidavit and the indictment is all based on the false information that he gave to other governmental officials. So isn't the Grobman of your complaint the false information? Falsification of evidence, false information. And how is that not a new Bivens claim? We don't even get to whether there are reasons to have caution. I understand the reluctance, which is why we place most of our emphasis on the Federal Tort Claims Act. All right. Well, maybe we better address that. I've made my point about Bivens. I understand where this court is on Bivens. Let me move, if I can, to the Federal Tort Claims Act. Can you start where you opened, talking about it being sufficiently pleaded here under Iqbal and Twombly? And the concerns that Jed Shirk had focused on the sort of generalized allegations of knowledge of falsity without information about how specifically he was advised, when the special agent was advised, and contrast to show that he knew or should have known. Where do we find in the complaint any specificity about that knowledge? In a number of places. First of all, Paragraph 3 of the complaint states very clearly that Agent Hogan had this information before from the inventor of the pocket heater. That's the critical point. He spoke to the inventor of the pocket heater. He had the information that what was sent to China on these e-mail communications had nothing to do with the pocket heater. It had everything to do with the device that Professor Xi himself had invented. They're two different devices. Paragraph 3 and Paragraph 53 both state, and I don't understand why Judge Shirk wouldn't understand this, both state that this information was known to FBI Agent Hogan before he provided the false information, both to the U.S. Attorney and to the grand jury. And beyond that, Paragraph 55 is as detailed as you can be. We have six subparts under Paragraph 55, which lays out all the false information that Agent Hogan included after being informed, after being informed by the inventor of the pocket heater. And let me be clear on what happened. The inventor of the pocket heater had informed Hogan that based on his view, he looked at the e-mails, he looked at the schematics that were sent allegedly illegally by Professor Xi to his colleagues in China, and he informed Agent Hogan that they were not related to the pocket heater. This is the person who invented the pocket heater. And he said, I'm familiar with the pocket heater. I'm also familiar with the device, a separate superconductivity device that Professor Xi had invented. Is there anything in the complaint about that sequence, that he was advised of that by the inventor before? Paragraph 3 and Paragraph 53 both say he had that information before he provided the false information to the grand jury. It alleges that he had knowledge before. But Paragraph 55 that you're pointing us to about any specificity about how he obtained that knowledge and why we should find that there is enough here for knew or should have known ahead of time, doesn't say anything about when he's told. Paragraph 55 is the details of that. Paragraph 3, before the indictment was sought and returned, defendant Hogan knew or recklessly disregarded the fact. Paragraph 53 says the same thing. Paragraph 55 then fills in all the plausible details as to why he should have known and did know that what he was presenting was false and fabricated. Can you have us link those up to say that it meets the standard for sufficiency of pleading? Absolutely. It's hard to be more detailed than we were in Paragraph 55 as to everything that the inventor of the pocket heater told FBI agent Hogan. And on that point, if he was told that, we're not claiming that to get an indictment in a scientific issue, a somewhat complex case, or this case turns out to be much less complex than the government suggests that it is, that the government has to seek out their own experts. But when they consult the leading expert on this issue, and that expert tells them, you're mistaken. There's nothing in any of these emails that implicate or reveal secrets about the pocket heater. It has nothing to do with the pocket heater. It's like comparing a microwave to a toaster just because both things heat or cook food. That's the agent's view. Once he knew that, he's left with nothing. There's no reliable evidence that Agent Hogan had to support the claim that Professor Xi had shared confidential information with colleagues in China. There's nothing left. Can I back up a minute? What you're saying now is addressed to the fact that there are tort claims here, correct? Absolutely. Now, we have the judge decided that the discretionary function exception didn't apply because the law was not clearly established. Now, he didn't analyze the claims. He just said discretionary function would apply. So there. So I'm assuming that you're going to argue that discretionary function should not apply because you've pled constitutional violations. Is that correct? Absolutely. So that's our basic argument, consistent with what this court has said for 30 years. Assuming, and we would grant, that when an agent is investigating criminal activity, there's certain discretion that's involved. This court has held, a majority of the circuits in this country have held, you've held it for 30 years, that if the agent violates the Constitution, has mandatory provisions, it's no different than the language in the statute that says if there's a policy, regulation, or statute that is mandatory in nature, it's no longer discretionary. If you violate the Constitution. I'm sorry. So which of the claims under the Federal Tort Claims Act fall under that category? You've pled count four as malicious prosecution, count five as invasion of privacy, count six as false light, emotional distress. Which, and should we analyze this, or should we send this back to the district court to say, you were wrong about discretionary function. If there's a constitutional violation alleged, you have no discretion to violate the Constitution. Please analyze these claims. Should we, do we need to do that? We don't need to remand. The government doesn't even argue that we have not, if we've stated constitutional claims. And remember the process. Which are the specific constitutional claims? Specific constitutional claims that we have alleged. And even if we were required to show they were clearly established, this Court has already done that in Holzer and Pfeiffer and Black v. Montgomery County. Malicious prosecution, number one. Fabrication of evidence, two. There's a separate freestanding fabrication of evidence claim under the Fifth Amendment. This Court held that in Black and Holzer. But I don't see a Federal, you've got two arguably qualifying Federal Tort Claims Act. Malicious prosecution and invasion of privacy. And we've got fabrication of evidence, a search warrant without probable cause. Well, that would be invasion of privacy. But fabrication of evidence would come in under malicious prosecution, I assume. And the reason it's framed that way is under the Tort Claims Act, we're not arguing that we've got a claim under the Federal Tort Claims Act because there was a Federal constitutional violation. That's not a basis for a Federal Tort Claims Act. No, it's to take you out of the discretionary function. That's right. It's state law. Under state law, we state claims that under Pennsylvania law, there was a malicious prosecution, there was fabrication of evidence, there was a search warrant, privacy interest without probable cause, and that there was race or ethnic bias. The District Court did not disagree on any of that. The District Court didn't say you didn't properly state. I'm sorry, Judge Bebas, but just finish this one point. The District Court did not say that there was a lack of a basis for state law. That gets us within the umbrella of the Tort Claims Act. The government then comes back and says, that may be true, but it's discretionary function. But the response to that, obviously, which is what we made, is that if it's a constitutional violation under Pooler and the other case in this circuit, it's no longer discretionary. The Supreme Court has said the Constitution is mandatory. Owens v. City of Independence. What about Fisher? Specifically, we asked you about the false light claim and where there's the intervening act of the U.S. Attorney's Office press release appearing to be the cause of putting in the false light for the reputational damage. Why doesn't Fisher take that out of the equation? I think all that is caused, and we need more discovery on that, obviously. There's stuff in the protective order that's going to be relevant on that. But the point is that everything that happened here, from the grand jury indictment to the search warrant for his house to the arrest warrant for him to any statement by the U.S. Attorney's Office, which, by the way, within three months after they saw the same evidence that Hogan had, dismissed the indictment based on that, all of that is the causation of Hogan. There are but four causes. But Fisher suggests it might not count as an approximate cause. Well, let me address Fisher because I think there are at least four different distinguishing factors. We received a notice about to look at Fisher, and I think the reason the government didn't argue and we didn't is that we both agree it's not relevant. It's an opposite on multiple levels. Fisher said we have two possible causal agents, right, in this case. We have the lab agents who were negligent, right? They found them negligent. That could have been a tort claims act. But that was supervened, right, when the head of the agency, acting on a health emergency question, right, you know, people could be poisoned by these grapes, decided in his discretion or her discretion, whoever the leader was at that point, that I'm going to pull these, you know, and destroy these items from the market, right, to protect the public. That's far different from here. We don't have two agents. We're challenging only the actions of defendant Hogan, who was the sole cause of the violation, and the grand jury, which is the operative, right, agency here, is not a government employee. Therefore, we don't have the kind of situation you had in Fisher where you had two possible causal agents and we had to decide which one. You only have one here. But the grand jury with secrecy doesn't really – We're talking here about the press release that the U.S. attorney released, which is a separate governmental actor that made a decision to issue the press release. Right. So to the extent there was a press release that increased the damage, it did. But the damage to Professor Gina's family wasn't because of a press release. I mean, that adds to the damages here, to what he suffered. The damage was he's indicted. His house is searched. He's strip searched. He's accused of being a technological spy, basically, in the indictment. That's the information that caused him to be suspended at Temple University, and that's the information that defamed him nationally. And he was under a cloud. He was facing 80 years in prison and a million-dollar fine based on completely false information. And, therefore, under the Tort Claims Act, let me just say, with respect to Fisher, Fisher didn't deal with the intentional tort provision in the FTCA, and the Miles decision of the Ninth Circuit, which we've advised the court of recently, goes even further. Miles says not only by Ninth Circuit law and by law of most of the circuits, if there's a constitutional violation, there's no discretionary function. But Miles makes another important point that distinguishes it from Fisher. Miles says if the government was right in arguing, as it did in the Shivers and the other case in the Seventh Circuit, which is found by statutory construction, a defense under discretionary function, it would read out all the intentional torts. When Congress amended the FTCA in 1974 to include intentional torts, as opposed to just negligence by the government, that became an important factor. These are all intentional torts. If you read Fisher, right, to bar that, that whole section of the FTCA becomes inoperable. No, no, no. There's a difference between one person doing something intentional versus one person inducing someone else to do something intentional. That's what it's getting at. And we understand by Fisher, a very close case, 7-6 in this, you know, and back in the circuit, you know, obviously good arguments on both sides. To be sure, but Fisher also recognized that what that agent in the lab did was negligent. It could have been actionable if that was the action of the agency. That's exactly what we have here. We have the lower agent. We don't have the head of the FBI making a decision after this. This is a single agent that's acting. This single agent acted in violation of the Constitution. We've got plausible allegations here of that. And as a result of that, we have two arguments. One is a complete, use the word trump, of the discretionary function exception because you have a constitutional violation. That's why it's relevant. And number two, as a matter of statutory construction, think about what happens to that clause. There's nothing left in the usual case where you have a single agent acting. Well, let's talk about that. I think the best argument for the minority position that maybe the constitutional violations are not, don't categorically come out of it is it shivers from the Eleventh Circuit, says, look, we've got this language at the end of discretionary function exception that says whether or not such discretion is abused. And the way the Eleventh Circuit puts it at 1F 4th at 931, the inquiry is not about how poorly, abusively, or unconstitutionally the employee exercised its discretion, but whether the underlying function or duty itself was a discretionary one. So the fit with the language, you're focusing on whether the act was unconstitutional, but the language whether or not such discretion was abused suggests maybe the individual act was wrongful. But if the whole function is the kind that was carved out by that clause, doesn't that put it on a different footing? Completely inconsistent with what this Court has said for 30 years and what a majority of the circuits have said. You'd have to reverse yourself, Pooler and the other cases. You have not taken that view of the FTCA, nor has the D.C. Circuit. The Second Circuit, the Ninth Circuit, and the fundamental misreading of the Eleventh Circuit, and there was a good dissent in the Eleventh Circuit case as well, is that they said their proposition was that a federal constitutional violation doesn't violate the FTCA. We agree. We agree with that. That's their position. They didn't go further. They didn't analyze the FTCA, as I just did, saying you look to state law first. That's the first step. Was there a violation of state law? Yes. Assuming the agent was otherwise engaged in discretionary functions, did the agent violate the Constitution? Yes. If so, there's no discretion to violate the Constitution. What's left then of the whether or not such discretion is abused clause? What situation would that still cover? The proposition is, and the language in the statute, the language in the statute says, if you violate a mandatory statute, policy, or regulation, you've got no discretion. There's no difference between violating a statute, a regulation, and a policy and violating the Constitution. Owens v. City of Independence says the constitutional are mandatory. The government tries to argue, well, some may not be mandatory, but you ought to do it right. And isn't the answer that abuse of discretion is a far lighter problem than constitutional violation? I mean, abuse of discretion is something we know about. Absolutely, which is why the fiduciary case in this circuit, from the beginning, this court has recognized, as has every circuit until these two recent decisions, which I submit are wrong. I think Myers is right on that, the answer to that. But however you think about that, this court, if it's going to follow the precedent in this court, this is an easy case. Let me ask you about pleading. I don't see the specific pleading of ethnic and nationality discrimination here. What in your complaint satisfies Twombly and Iqbal? So the pleading is this. When you look at what the agent did, having been informed by the inventor of the pocket heater that nothing in these four e-mails has anything to do with a pocket heater, you're misreading it, this relates to his own instrument, the agent is left with nothing. If you accept that allegation, and we're in a motion to dismiss it, right? We'll find out more about what the agent did and why he thought, continue to think, if that's what he did, that there was a violation when we get to discovery. But once that's done, the agent is left with nothing, right? And so our allegation is his motive, at least in part, because he was part of this unit that's investigating, right, of sharing of information with China, nothing wrong with the government doing that kind of investigation, we understand that. We've got an inference, at least at this point, that what he acted on was ethnic bias. What gives rise to that inference? The inference is just as easy, that he just didn't like him. Maybe he resented him. There's a whole range of possibilities here. He didn't like him, I'll get credit. You have to plead something that gives rise to that inference. The fact that he's of this unit, right, at this point, on a motion to dismiss, if he's left with nothing, sure. One inference is he continued to think wrongly, I did it right. That's going to be an issue, whether it's negligence or recklessness, or that's a jury issue. The second inference is possibly, I'll do it because if I can get an arrest, that's a credit to me as an FBI agent. Sure, it's just work-related. The third inference is that he acted this way because of the ethnicity of Professor Gee. That if Professor Gee was not, right. That's not an inference, that's a possibility. I think we have enough, our position is at least at the pleading stage, before we get to discovery. And remember, we were hampered in part. We gave this court a lot. We gave the district court a lot in terms of the details. Some of the information we couldn't make public, it was subject to a protective order during the criminal trial. Anything here that suggests that a white person suspected of passing information to the Chinese government or another government would not have received this treatment? What is there? Well, we do know on the record, and you have it from the amicus briefs, of the number of cases which have been dismissed after indictments were returned of other Chinese American sons. But there's no allegation that Special Agent Hogan was involved with those cases. Don't we need, I mean, in terms of an inference of discriminatory animus, doesn't that have to be specific to this actor? This court's decision in Pitts, which we cite under racial discrimination, says you can prove it by circumstantial evidence. Of course. You don't need a smoking gun. Of course, but we don't even have any circumstantial evidence. We have a possibility. When you're left with nothing, when an agent knows, based, again, on our allegations, this were only a motion to dismiss stage. When the agent knows for sure, I've got nothing, and proceeds anyway, and that agent is part of a unit that's looking specifically at Asian Americans, there is a risk under strict scrutiny, right, that that agent, There is a risk. right, is looking at it through a different lens than the agent should look at. That's our position. We can't read an inference of discrimination into silence. I mean, the implications of that for malicious prosecution and retaliation claims, that's just not tenable. Nothing can't be enough to satisfy Trump. Right. But let me be clear. I understand the court's understanding and maybe the gap here at this stage in terms of racial or ethnic bias. That has nothing to do with our other claims, right? Our other claims are sufficient. Malicious prosecution, falsification of evidence, search without probable cause. To be clear, is the circumstantial evidence that you would say distinguishes this case is that you've made allegations about the bias of the agency to which this actor is associated? That's right. Okay. That would be the basis. But let me be clear. Even if the court disagrees with that, the basic doctrine under the FTCA, we have. We've got a state law claim. We've got a constitutional violation which removes, under this court's precedent, any defense from the discretionary function. And we should at least be able to go to discovery on the FTCA claim. So let's go back to the discriminatory, I'm sorry, to the discretionary function exception. See, on the basis of our case law, we are to agree that there's no requirement that the right be clearly established. There are scholars looking at that that have distinguished that from a finding that the conduct be clearly unconstitutional. Do you see a meaningful distinction there in the qualified immunity context or as applied here? I don't. And I think one of the reasons that there cannot be is that the Supreme Court has made absolutely clear that governmental entities are not entitled to qualified immunity. I mean, that's been the law for 40 years since Owen versus City of Independence. That's where the court said, sure, individual agents. That's why Agent Hogan on the Bivens claim, if it got that far, could argue qualified immunity. The United States, as an entity, is not entitled to qualified immunity. Qualified immunity is to protect the individual who's acting, right, from liability. And, therefore, just as a doctrinal matter, there's no basis for qualified immunity. What the government tries to argue, and they don't even push that argument, really, that somehow there's a qualified immunity. And even if there is, our claims are all clearly established in the circuit, so it becomes irrelevant. The government says, well, yeah, we've got a problem here because, really, what they're arguing is that an agent has to get affirmative proof from his own expert, right, before he gets an indictment in a case like this where it may be complex. That's not opposition. Opposition is just the opposite. When you're informed by an expert that you have nothing, then you've got to go further. There's no requirement. You could have probable cause with that expert advice, but not in this kind of misunderstanding. So qualified immunity doctrinally should not apply. And even if it did, these courts' decisions in Halsey and Black have made clear that the Constitution is violated in this kind of situation by his acts, malicious prosecution, search without probable cause, clearly established in this circuit. What do we do just in terms of the standard where the law is unsettled? If it's not until a given case that's presented to the court that there's a determination that it is, in fact, a constitutional violation, how does that map onto the discretionary function exception? So our view is, and I think all the circuits agree on this, in saying that if there is a violation, if a court decides in a particular case, even if they've never held it before, it was not clearly established, we look at it for the first time, what you did amounts to a Fourth Amendment violation. Let's take that case. The specific agent has a qualified immunity defense under, it was 1983, for example, and we didn't have a Bivens issue, has a defense of qualified immunity. The municipality that is sued as well does not. The United States under the Tort Claims Act does not have it. And that's been the rule in every circuit. In fact, the 11th Circuit and 7th Circuit don't go up on qualified immunity. They go up on a different kind of reading of the statute. No circuit has suggested or held of the 11 circuits that qualified immunity is a defense to a Tort Claims Act. If a court decides it was a constitutional violation, the government loses the discretionary function defense. Fair enough, but the concept of what's clearly established presumably would carry over if there were a requirement in this context, in the FTCA context, that the right be clearly established. But only if you grafted on qualified immunity to this doctrine that where there's a constitutional violation, there's no discretionary function defense. What's weird is that the Supreme Court has used some language about specific directives, and Gilbert and Berkovitz, so it's not out of nowhere that the court has this idea where it's looking for something that's specific or clear. Right, and I understand that in that context. There's got to be a mandatory principle, right? A statute can do it, regulation can do it, a policy can do it, the Constitution can do it. The Fourth Amendment says no unreasonable searches, no searches without warrants, so on and so forth. There's a specific, the Fourth Amendment's been interpreted to say you can't maliciously prosecute somebody. You have a cause of action. Our point is in any specific case, in any specific case, if a court finds that constitutional violation after going through all the facts in the case, even if they hadn't addressed it before, there's no discretionary function defense. Our basic point in this case is it doesn't matter. Even if you went that far, every right we argue here, I understand the court's problem with the Fifth Amendment claim on racial discrimination, but every other of the Fourth Amendment rights that we argue here have been clearly established for years in this circuit and the United States Supreme Court. So in a sense, it's a non-issue. When Judge Surik said it's got to be clearly established, he didn't even wrestle with all your court's cases, which made it clear that it was. So all we ask the court to do is apply this court's precedent. That's all we're asking the court to do on the FTCA. I understand on Bivens, room for disagreement as to whether we're in the heartland or whether we're just a little bit, we don't have a client named Bivens, but we think the facts are very similar. I know I've run out of my time. I don't want to test the patience of the court. If I could just have those two minutes rebuttal. Indeed. Thank you. We'll hear from the government. Good morning, Your Honors. May it please the court, life of the world with the Department of Justice, on behalf of Applebee's. How does the agent pronounce his name? Hogan? Hogan. Hogan. Yes, Your Honor. Thank you. I'd like to start where I think my colleague's argument ended, with the discretionary function exception, and particularly Judge Bivens, your question about the Supreme Court's case law, about the specificity of the directive that the court has used, even in the statutory context, to identify the types of legal requirements that cabin the discretion that might otherwise be available, given the nature of the actions at issue. The Supreme Court's test in both Berkovitz and Galbert, which this court has recognized in Fisher Brothers and numerous others' cases since then, requires that there be a specific mandatory directive. But as soon as the court has made the determination that conduct as pleaded would constitute a constitutional violation, then surely the government agrees that it's mandatory that that not be violated. We certainly don't take issue with the mandatory component. The difficulty is that to satisfy the specificity requirement, the legal requirement must specifically prescribe a course of conduct in the case before it. And determining whether a given factual pattern meets probable cause, that is the sort of thing in which discretion inherently exists. I mean, this court concluded that in Pooler. The D.C. Circuit in Gray has also articulated the reasons why that's so. And concluding that just because a constitutional violation is alleged, the elements of the constitutional Fourth Amendment claim here and a malicious prosecution claim are identical. I mean, it's the lack of probable cause and malice. So is it the government's position that any time there's a probable cause determination involved, that regardless whether there is a constitutional violation or not, the discretionary function exception applies, simply because probable cause is part of the analysis? No, Your Honor. Our position is that the constitutional requirement, just as a statutory requirement, has to specifically prescribe a course of conduct. And to conclude that a specific course of conduct is prescribed in the face of a given factual pattern would overturn Pooler, which was a malicious prosecution case, which the court concluded was clearly subject to the discretionary function exception. Both the sort of activities in determining what sort of investigation to conduct and then the decision to submit that information to prosecuting authorities as the basis for an indictment. But this is based on fabrication of evidence. That's the essential problem here that distinguishes it from your normal malicious prosecution case, isn't it? And how can fabrication of evidence be anything but a constitutional violation? Well, if you look at the actual factual allegations of the complaint, Your Honor, this is much closer to a malicious prosecution case. The supposed fabrication of evidence is coming to a judgment that the plaintiff's communications were unlawful rather than lawful and presenting that assessment to. He made up stuff. That's very different from your standard malicious prosecution case. Your Honor, there's not an allegation in the complaint about any particular factual statement that was made up. There are certain allegations that exculpatory evidence was provided at some point without any real specificity  and the agent, nonetheless, with prosecutors, presented this case to a grand jury. They specifically claimed that the special agent was advised by the inventor that these e-mails did not relate to this device, that it was a different device. In light of that, if we do accept the imprints that can be drawn for sequencing purposes, that he was advised of that before making statements that went into a search warrant or went in front of the grand jury, why isn't that a specific false statement? Well, even as to that allegation, Your Honor, there's no allegation in the complaint that Special Agent Haugen said that the inventor advised him differently. And if you look at the complaint, it's in the allegations that Professor Shi initially purchased this technology from a company owned by one of the inventors of the pocket heater, only to have another company assert ownership, require him to sign an NDA as a condition of leasing. So in light of the allegations of the complaint, that's much more the sort of conflicting inferences, even if you accept the inference that it was presented to the agent before the indictment. It's the sort of conflicting inferences that the probable cause standard does not require an agent to resolve correctly to rule out sort of an innocent explanation for suspicious facts. At the very least, shouldn't this be something that maybe the district court looks at in the first instance? I mean, the district court here required there to be clearly established law. And if we don't believe that that's correct, then shouldn't you make this argument the first instance to the district court as to discretionary function as to all of these specific allegations? Well, the district court concluded entirely sort of consistent with this court's case law that discretionary function analysis looks to the nature of the actions. They have not argued that the nature of the actions here are different from those at issue in Pooler. It does not sort of rely on the subjective intent of the person exercising discretion. And in looking for the sort of specific mandatory directive that the Supreme Court has required, in my colleague's reply brief, I mean, what they point to in terms of their argument as to why it's sufficiently specific is their briefing on the clearly established constitutional violation argument. They are relying on those arguments for the claim that they've alleged a sufficiently specific directive. So it's entirely natural, consistent with the court's decision in Bryan, for the district court to look to the same standard. So we're not arguing that the standards are identical, but there's certainly no error when there's no other basis to conclude that the Constitution provides a sufficiently specific directive to look to that clearly established standard in this case, given the sort of that's the basis by which they've argued they've alleged a sufficiently specific directive. You seem to be reverting to the concept of clearly established in the qualified immunity context. That is, that is sufficiently specific and mandatory that an agent would know ahead of time. But the argument that seems to be put forth by the plaintiff is that here we're talking about just the finding of a constitutional violation. And it doesn't matter whether there's advance notice to a reasonable officer or not, that we have different concerns when it comes to discretionary function exception and narrow interpretation of exceptions to the waiver of sovereign immunity in the False Tort Claims Act. Well, we agree. I mean, it's a different sort of standard when you're applying the express discretionary function exception in the context of a waiver of sovereign immunity. That doesn't sort of provide a basis for reading in a constitutional exception to the discretionary function exceptions analysis that is not there in the text. I mean, I think the Eleventh Circuit's decision in Shivers does note that, I mean, as a matter of just textual analysis, the notion that you can dispense with the Berkowitz-Galbert inquiry whenever you have alleged a constitutional violation does not track the text and the way the Supreme Court has indicated that text should be interpreted. I guess you might have a point on, but I think Mr. Radowsky has a strong point about the way the Supreme Court's been applying this. In cases like Galbert and Berkowitz, it hasn't been looking function by function. It's been looking act by act. And so if that's the case, then the Seventh and Eleventh Circuit need to take it up with the Supreme Court. Well, in my view, the Seventh and Eleventh Circuit do look at the specific natures of the Acts 11. And, I mean, in the Seventh Circuit case, it was a malicious prosecution allegation, and they concluded the nature of those actions consistent with the Court's previous case law was that those were discretionary, I believe, in the Eleventh Circuit. How can an Act be within discretion if the Act is unconstitutional? The logic of the statute that when you look at, you know, cases like Berkowitz and Galbert, the logic of treating statutes and regs like we've got to look for clear things is, well, in that situation, maybe it was delegated to the agency if it wasn't clear. But there's no way in which an unclear constitutional provision delegates any power to an agency. Well, indictment decisions, the sort of actions underlying a malicious prosecution claim, the decision whether to take certain action in enforcing the laws of the United States, those are delegated both constitutionally and statutorily to the executive branch. I mean, that's the gray sort of articulates why, absent the sort of constitutional allegations, that's why this Court and others have held that those malicious prosecution claims are generally subject to discretion. But let's say you have some kind of selective prosecution violation of, you know, Fifth Amendment or something like that. That's not delegated. The ability to engage in selective prosecution is not delegated to a prosecutor. It's certainly possible if the nature of the actions were different, if they were challenging sort of not a particular decision to go or not go forward with an indictment, that might change the discretionary function analysis. If the alleged constitutional violation was clearly established, that again might cabin the discretion similar to the way it does in the Berkowitz or Galbert context. What you can't do, I would submit, is that accepting the general probable cause standard is obviously constitutionally grounded, that in any case a court determines it was not met in a particular case, you have essentially gutted Pooler and the cases Pooler reflects that malicious prosecution is sort of the quintessentially discretionary actions that the exception does protect. I'm confused about your reliance on Pooler. We said there if the complaint were that the agents of the government in the course of investigation had violated constitutional rights or federal statutes, the outcome would be different since federal officials do not possess discretion to commit such violations. But when the sole complaint is here, as here, to the quality of the investigation as judged by its outcome, the discretionary function should and we hope does apply. How does Pooler help you? So Pooler, in talking about the types of constitutional allegations that might not be sufficient, mentioned specifically unlawful searches which are unlikely to be covered by the discretionary function exception. Well, there's a difference between an unlawful search on someone, you know, lacking probable cause or something, and a purposeful, you know, omission of information or making up information. This is of a different character from the quality of the investigation being poor. There are certainly, I mean, Pooler was before. Or there again, shouldn't we have the district court analyze whether it's just a quality investigation and get further into the weeds of this because it's a matter of degree? I think the district court did in determining that they did not state a clearly established constitutional violation here. There are violations that go beyond the quality of the investigation. The First Circuit's decision in Lamone involves actual allegations of fabricated evidence to sort of frame the plaintiff in that case, which were proven. Those, both in the nature of the actions involved and the clarity with which they violate a constitutional standard, that might get you out of the discretionary function exception. The other point I would make on Pooler is that since Pooler, the Supreme Court in Galbert has made quite clear the inquiry is the nature of the actions, not the subjective intent of the decision maker exercising discretion. Having it turn on sort of whether it's a garden variety malicious prosecution claim versus a constitutional claim flips that inquiry. I mean, it again reads out the Galbert standard. Does this just boil down to the sufficiency of the pleading here? Well, certainly, as in Karklis, I mean, if this court concludes that they have not stated a constitutional violation, which we submit they have not, it need not decide how. Let me ask you, Mr. Radovsky argued with some force that if we put paragraphs 353 and 55A together, we have the inventor of the pocket heater telling Special Agent Haugen that this is something completely different. And 353 tell us that those statements were made to him before he went ahead and said the contrary. So how is that not specific enough? What more does he need to plead? Well, even if you stitch together the complaint, the allegation, that way to get the sort of timing assertion, it still is the sort of conflicting inference that he doesn't do right. So a constitutional violation at the probable cause stage, again, in the context of we know from the allegations that Professor Xi had initially purchased this technology from one company owned by one inventor. Another company, presumably with some other connection to the technology, then asserted ownership and required him to sign an NDA. The fact that one inventor in that context is saying this is not one of the e-mails is not concerning this technology, that does not sort of give rise to an inference that in nonetheless proceeding with the indictment, the agent intentionally, knowingly, or recklessly provided a false statement. Again, though, I say, well, let's let the district court sort this out. Well, Your Honor, the district court erred in sort of using the clearly established violation. No, I apologize. We don't think it erred in using that formulation, when that's the only articulation the other side has given of how they've alleged a sufficiently specific directive. Otherwise, you're reading a constitutional exception into the discretionary function exception, absent any textual basis to do that, absent even putting the constitutional requirement to the same standard that a statutory violation. Berkowitz says there has to be a permissible exercise of policy judgment. If what is pleaded tracks what has been held to be a standard type of constitutional violation for purposes of malicious prosecution, then how can it be a permissible exercise of policy judgment? Why shouldn't we be at the motion to dismiss stage, certainly in the way we're supposed to draw inferences, concluding that that is sufficiently pleaded as a one-of-the-mill violation and a discretionary function exception, therefore, can't preclude it from moving forward? Well, Galbert makes clear that, again, the subjective intent of the decision-maker is not the basis on which the court determines whether or not judgment has been permissible. The judgment is permissible in a particular case. I would add that this Court's decision in Bayer, in particular, I think also articulates well that even I believe it's a regulatory standard there, but an allegation that the discretion was impermissibly exercised because it was in violation of some regulatory requirement not to give preferential treatment, that doesn't sort of get you out of the Galbert inquiry when the nature of the actions otherwise don't, are discretionary. All right. Thank you. Mr. Rudofsky. I think the last thing that the government argued makes our point. On their reading of the complaint, there are conflicting inferences that you can draw as to what Agent Hogan did. On a motion to dismiss, when there are conflicting inferences, this Court is clear the case must go on to discovery. It will be reviewed again in summary judgment. A jury can make a decision. If they want to argue that Agent Hogan was just negligent at some point and didn't deliberately violate Professor Gee's rights, they're free to argue that. They can argue it in summary judgment. They can argue it to the jury. The point, and I think you all made it, is that, and let me just read from Owens v. City of Independence, the case that rejected qualified immunity for government entities as to the question of whether constitutional dictates are mandatory or not compared to statutes, regulations, even more than statutes, regulations. They said constitutional dictates, and I quote, are absolute and imperative. The Fourth Amendment, once you define it, is absolute imperative. Sure, there are exceptions, but once you reach a decision, and so much water has passed under the bridge since Pooler and Berkovitz. This Court has said in the 1983 context, which is the same as to the constitutional violations, malicious prosecution is a Fourth Amendment violation. Falsification of evidence is both a Fourth and Fifth Amendment due process violation. They've made that clear. Even under a clearly established mandatory standard, we win. And that's why, Judge Wendell, I resist, I push back on the notion for a remand. We waited two and a half years for Judge Serg to decide this case. It took a long time. He had it. I think he made two fundamental errors in misreading the complaint and application of the law. Based on clearly established law in this Court and the Supreme Court, this Court should remand it not for reconsideration on a motion to dismiss, but to go ahead with discovery, let the government make these arguments if they can at summary judgment. To clarify, for purposes of the Federal Tort Claims Act, if we were to agree with you as to the sufficiency of the pleading for a malicious prosecution claim that would negate the discretionary function exception, is there any need for us to reach your claims of an equal protection violation? I think you have to address them, because we stand by them. I think we've got that claim. But I've made clear that even if we only succeed on malicious prosecution, falsification of evidence, and a search, right, without probable cause, any one of them defeats the discretionary function as to those claims. So each claim stands on its own. If you think that we haven't pled enough for a Fifth Amendment racial ethnic discrimination claim, you could certainly affirm dismissal of that, but it still leaves the other standing, and they operate to defeat the discretionary function, if I understand your question. Well, the nature of the claims you've brought in Counts 4 through, I guess, 9 we're dealing with, none seem to be specific to race or ethnic discrimination. I understand the Court's point about that. I think given the way we pled it, both in the factual pleadings and then in the counts, there's sufficient plausibility here that there's an independent Fifth Amendment claim. I understand the Court's feeling that where's the evidence for that. I think we have enough for an imprint. I understand how that independent claim might inform a Bivens claim. I guess I'm trying to understand for purposes of the Federal Tort Claims Act what relevance it has. That's right. But I may be misunderstanding your question. If you decide that there's not sufficient evidence for a freestanding Fifth Amendment race ethnic discrimination claim, that leaves the Court with consideration of malicious prosecution, falsification of evidence, and the Fourth Amendment search without probable cause. All of those are clearly established. All of those would operate to defeat the discretionary function defense as to those three claims. That's my point. The point is that it's not pled as a Federal Tort Claims Act. It's pled assuming a Bivens. It's the only purpose, in other words, the only relevance for purposes of the Federal Tort Claims Act is as it relates to discretionary function exception. Exactly. That's right. It operates to defeat the discretionary function, which is exactly what Pooler says all the other cases say and which every circuit until the recent decisions have made the same point. But it doesn't expressly underlie the claims of malicious prosecution, invasion of privacy, emotional distress. That's right. That's correct. Okay. Thank you. Thank you. Okay. Absolutely. We thank counsel for excellent briefing and argument in this case as well. And could the parties please also arrange for a transcript to be produced in this case? Again, we'll put out an order to that effect. And we will take the case under submission. Thanks all.